Richard M. Garbarini (RG 5496)
GARBARINI FITZGERALD P.C.
250 Park Avenue 7th Floor
New York, New York 10177
Telephone: (212) 300-5358
Facsimile: (347) 218-9478

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
RICH CUPOLO, JOHN EMANUELE, and
BRYAN EICH, individually and on behalf of all
other similarly situated copyright holders,

                Plaintiffs,

                v.

PANDORA MEDIA INC.,

                Defendant.
---------------------------------------------------------x

Index No.: 17-cv-6304

**COMPLAINT AND JURY DEMAND FOR DAMAGES FOR COPYRIGHT INFRINGEMENT**

Plaintiffs RICH CUPOLO ("CUPOLO"), JOHN EMANUELE ("EMANUELE"), and BRYAN EICH ("EICH") (collectively the plaintiffs) by and through their attorneys at GARBARINI FITZGERALD P.C., bring this Class Action Complaint and Jury Demand against defendant PANDORA MEDIA INC. ("PANDORA") based on defendant's infringement of plaintiffs' and the Putative Class' rights to their copyrighted musical works pursuant to the Copyright Act and Copyright Revisions Act, 17 U.S.C. §§ 101 *et seq.* (the "Copyright Act" or "Act"), and to remedy defendant's deliberate scheme to withhold royalties owed plaintiffs, and the Putative Class.

## NATURE OF THE ACTION

1. Plaintiffs CUPOLO, EMANUELE, and EICH own the publishing rights to a combined thirteen (13) copyright registrations. The named plaintiffs bring this matter on behalf of themselves and a putative classes comprised of independent artists seeking to remedy defendant's systematic infringement of their copyrighted recordings.

2. Defendant owns and operates a subscription interactive music streaming service which is subject to Section 115 of the Act ("Section 115").

3. Plaintiffs were not aware their recordings were somehow included in defendant's premium subscription interactive music streaming service.

4. Pursuant to Section 115, defendant was required to serve an NOI, in the form proscribed by 37 CFR § 201.18, 30 days after making plaintiffs recordings available and prior to distributing them. Defendant failed to serve a valid NOI for any of plaintiffs' recordings, but reproduced and made all of them available. Moreover, all of plaintiffs' recordings were made streamed in the United States, yet defendant failed to report or pay royalties for any U.S. streams.

5. Defendant is engaged in a systematic process of infringement by, inter alia: (i) reproducing plaintiffs' and the Putative Class' recordings without first serving an NOI, (ii) distributing (via streams) plaintiffs' and the Putative Class' recordings without first serving an NOI, (iii) failing to notify plaintiffs or the Putative Class that their copyrighted recordings were included in defendant's premium subscription interactive music streaming service, and (iv) failing to serve any Monthly and Annual Statements of Account to conceal the infringements.

6. Defendant deprived plaintiffs and the Putative Class of publishing royalties by: (i) not paying publishing royalties on streamed recordings; (ii) failing to provide accurate, or any, data to the artists related to paid streams, promotional streams, or incomplete streams; and, (iii)

failing to serve Monthly and Annual Statements of Account to conceal the stolen royalties.

## PARTIES

7.      At all times material hereto, plaintiff RICHARD CUPOLO was, and is, an individual residing in Manhattan, New York. CUPOLO released ten copyrighted recordings under the name *City Society* which are covered by ten (10) U.S. Copyright Registrations Nos. SRu 1-l13-046, SRu 1-113-043, SRu 1-113-044, SRu 1-113-041, SRu 1-113-052, SRu 1-113-054, SRu 1-179-976, SRu 1- 113-053, SRu 1-113-047, and SRu 1-113-049 which have been streamed on defendant's premium subscription interactive music streaming service since December 2016..

8.      At all times material hereto, plaintiff JOHN EMANUELE was, and is, an individual and resident of Queens, New York. EMANUELE released three albums under the name *Zero Bedroom Apartment*: *Filmmusik 1*, U.S. Copyright Registration No. SR 677-965, and *Filmusik 3 & 2013 Licensing Cues*, U.S. Registration SRu 1-111-713. All of the recordings listed on both registrations have been streamed on defendant's premium subscription interactive music streaming service since December 2016.

9.      At all times material hereto, plaintiff BRYAN EICH was, and is, an individual and resident of Mineola, New York. EICH released an album, *Sleeping by A Wire*, U.S. Copyright Registration No. SRu 661-491 which has thirteen recordings, all of which have been streamed on defendant's premium subscription interactive music streaming service since December 2016.

10.     Upon information and belief, Pandora is a corporation organized under the laws of the State of Delaware with offices at 2101 Webster Street, Suite 1650, Oakland, California, 94612 and 125 Park Avenue, 19th Floor, New York, New York 10017, among other locations.

## JURISDICTION AND VENUE

11. The jurisdiction of this Court is based upon 28 U.S.C. §§ 1331 and 1338 in that this controversy arises under the Copyright Act and Copyright Revision Act of 1976 (17 U.S.C § 101 et seq.). This action is a civil action over which this court has original jurisdiction.

12. On information and belief, a substantial part of the facts of infringement complained of herein occurs or has occurred in this district, and defendant is subject to personal jurisdiction in this district because they maintain a headquarters in this district located at 125 Park Avenue, 19th Floor, New York, New York 10017.

13. Personal jurisdiction over defendant is proper in this Court on the grounds that defendant, through its interactive web-based subscription service, caused the unlicensed distribution of the plaintiffs' and the Putative Class' copyrighted recordings throughout the State of New York, including within this judicial district.

14. This Court has personal jurisdiction over defendant pursuant to CPLR § 302 (New York's long-arm statute) due to its continuous and systematic business activities within New York as described below. Defendant has conducted and does conduct business within New York.

15. Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) and/or 28 U.S.C. § 1400(a).

16. Plaintiffs have the right to bring the within action pursuant to 17 U.S.C. § 501(b).

17. The copyright in every musical composition at issue was registered in the United States Copyright Office. 17 U.S.C. §§ 409-412.

18. Copies of each certificate issued by the U.S. Copyright Office to the named plaintiffs, and all applicable assignments, are annexed and incorporated hereto respectively as **Exhibit 1.**

19. Each of the plaintiffs' copyrighted compositions was registered within three months of publication, or thirty days prior to the infringement, and satisfy the registration prerequisite under 17 U.S.C. § 412(c).

## CLASS ALLEGATIONS

20. Plaintiffs bring this action on behalf of themselves and on behalf of all other similarly situated owners of the publishing rights to copyrighted musical recordings which were reproduced and made available by defendant on its premium subscription interactive music streaming service in or after December 2016.

21. The Putative Class is comprised of, and defined, as follows:

> "All owners of the publishing rights in musical compositions subject to U.S. Copyright Registrations, which are not subject to a blanket license, and those compositions were reproduced, made available, or distributed by defendant in its subscription interactive music service on or after December 2016."

22. Defendant's systematic failure to serve NOIs, pay royalties or late fees, and its failure to serve Annual and Monthly Statements of Account, are clear indicators of defendant's intent to infringe, or at the very least, its reckless disregard of plaintiff's and the Putative Class' publication rights afforded by the Copyright Act.

23. This action may be properly brought and maintained as a class action because there is a well-defined community of interest in the litigation and the members of the proposed class are clearly and easily ascertainable and identifiable.

24. The Putative Class for whose benefit this action is brought is so numerous that joinder of all class members is impracticable. Plaintiffs are informed and believe that there are thousands of class members and that those class members can be readily ascertained from defendant's database files and records, and via discovery in this action.

25. The members of the Putative Class are so numerous that joinder of all members is

impracticable.

26. Plaintiffs and their counsel do not anticipate any difficulties in the management of this action as a class action.

27. Plaintiffs will fairly and adequately represent the interests of the Putative Class, and are committed to vigorously prosecute this action and have retained competent counsel experienced in class action litigation.

28. Plaintiffs are class members and have no interests antagonistic to or in conflict with other Putative Class members.

29. Defendant was statutorily obligated to maintain records of the musical compositions it distributed as well as the royalties paid. The Putative Class members can readily be located from those records, and notified of this action.

30. Plaintiffs and all members of the Putative Class have sustained actual pecuniary loss and face irreparable harm arising out of defendant's systematic and unlawful diminution of the royalty payments with accounting for those payments as described herein.

31. Plaintiffs have raised a viable claim of the type reasonably expected to be raised by members of the class, and will vigorously pursue those claims.

32. If necessary, plaintiffs may seek leave of the Court to amend this Complaint to include additional class representatives to represent the class or additional claims as may be appropriate.

33. Common questions of fact and law exist as to all members of the class that predominate over any questions affecting only individual members of the class.

34. These common legal and factual questions, which do not vary from class member to class member, and which may be determined without reference to the individual circumstances

of any class member include, without limitation, the following:

- (a) whether defendant reproduced, and made available plaintiffs' and the Putative Class' copyrighted recordings via their subscription interactive music streaming service on or after August 21, 2014;

- (b) whether defendant's reproduction, making available, and distribution was subject to a publishing license;

- (c) whether defendant served valid NOIs for each of the plaintiffs' and Putative Class members' recordings within 30 days of making the recordings available, and prior to distribution;

- (d) whether defendant deleted stream data to hide their infringing activity;

- (e) whether defendant failed to serve any Monthly or Annual Statements of Account to conceal the infringements;

- (f) whether, from December 2016 through the trial of this action, defendant made royalty payments to plaintiffs and the members of the Putative Class for the distribution of their musical compositions through defendant's premium subscription service;

- (g) whether defendant failed to provide an accurate list of every stream of plaintiffs' and the Putative Class' musical recordings that occurred as well as failed to report free/part streams;

- (h) whether defendant owes plaintiffs and the Putative Class late fees;

- (i) the basis and method for determining and computing damages;

- (j) whether defendant's conduct was intentional as proscribed by 17 U.S.C. § 504(d); and,

- (k) whether defendant's conduct is continuing, thereby entitling plaintiffs and members of the Putative Class to injunctive or other relief.

35. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual litigation of the claims of all class members is impracticable.

36. Every member of the class could not afford to pursue individual litigation.

37. Individualized litigation would also present the potential for varying, contradictory, or inconsistent judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

38. On the other hand, the maintenance of this action as a class action presents few management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the class.

39. Plaintiffs anticipate no difficulty in the management of this action as a class action.

## GENERAL FACTS

40. As a general proposition, a copyright confers on the owner the exclusive right to reproduce the copyrighted composition.

41. Absent a license from the copyright owner, which the owner is free to grant or deny, reproduction of the composition by another constitutes copyright infringement.

42. When Congress enacted the Copyright Act of 1909, it was concerned that exclusivity with respect to musical compositions would give rise to "a great music monopoly." It therefore modified the principle of exclusivity in the case of nondramatic musical compositions by enacting a compulsory license provision which, in defined circumstances, imposed upon the copyright owner a license permitting the mechanical recording of the copyrighted song "on such media as a phonograph record or a piano roll."

43. Although recording technology has changed since 1909, licenses to record musical compositions on such media are often called "mechanical licenses." The within Complaint refers to the "mechanical licenses" as "publishing licenses" or "publishing rights".

44. The compulsory publishing license concept was carried forward in Section 115 of the Copyright Act of 1976 which, generally speaking, permits an entity wishing to record a copyrighted nondramatic musical Composition to do so in the absence of the copyright owner's consent in exchange for payment of a statutory royalty.

45. But the availability to defendant of compulsory publishing licenses is dependent on the strict limitations of Section 115(b)(1) of the Act which requires, in pertinent part, that "[a]ny person who wishes to obtain a compulsory license under this section shall, before or within thirty days after making, and before distributing any phonorecords of the Composition, serve notice of intention to do so on the copyright owner."

46. The mere act of reproducing plaintiffs' and the Putative Class' musical compositions, and making them available in defendant's library for 31 days without first serving an NOI, constitutes an infringement of plaintiffs' and the Putative Class' rights under 17 U.S.C. § 106(a).

47. An NOI must be served prior to being streamed (distributed).

48. Defendant must also provide Monthly and Annual Statements of Account and pay the statutorily prescribed royalties on a monthly basis.

49. Defendant failed to pay royalties by the 20th of the month following the month in which the stream occurred. Thus, defendant was required to pay a late fee of 1.5% per month.

50. The name and address of the owner of the publishing rights is readily ascertained from the third party aggregator who submitted the recordings to defendant for review.

51. If, for some reason, the name and address of the owner of a given composition cannot be readily identified from the submission records, or the public records of the U.S. Copyright Office, defendant could have filed the NOI with the Copyright Office. See 17 U.S.C. § 115(b)(1).

52. The content and method of service of the NOI are prescribed by statute and regulation. See 17 U.S.C. § 115(b); 37 CFR 201.18. Defendant failed to serve any NOIs.

53. The duration of the NOI is not proscribed by rule or regulation; consequently, an

industry standard two-year duration is read-into the license.

54. Defendant intentionally failed to adhere to its Section 115 obligations, while enjoying all of the benefits afforded by Section 115.

### Result of Failing to Obtain a Mechanical License

55. When defendant makes a musical composition available or distributes that composition before a publishing license is obtained, the owner(s) of the publishing rights to that musical composition (generally the artists) do not get paid. For songwriters, like plaintiffs, whose recordings are not played on the radio, the royalties earned from streaming revenue is often substantially the largest part of their income.

56. Moreover, making available and reproducing a musical composition without a license for the publishing rights is copyright infringement under 17 U.S.C. § 501, and may not be cured after the fact by attempting to obtain a compulsory license. See Section 115 ("failure to serve or file an NOI forecloses the possibility of a compulsory license and, in the absence of a negotiated license, renders the making and distribution of phonorecords actionable as acts of infringement . . .".)

57. The August 4, 1995, United States Senate Report, *Digital Performance Right in Sound Recordings Act of 1995*, confirms:

> Of course, a digital transmission service would be liable for any infringing digital phonorecord delivery it made in the absence of a compulsory license or the authorization of the musical work copyright owner:

Senate Report No. 104-128, S. Rep. 104-128 (1995) at 27 (emphasis added).

58. The United States Senate Report further states:

> If a record company grants a license under its rights in the sound recording only, and does not grant a mechanical license under the copyright in the musical work embodied in the sound recording, **it is the transmission service's responsibility to obtain a license under the**

**musical work copyright**.

Senate Report No. 104-128, S. Rep. 104-128 (1995) at 31(emphasis added).

## AGGREGATORS

59. Digital distribution companies, or aggregators, function exactly like a record label for independent artists.

60. There are nine different aggregators, namely, CD Baby, DistroKid, Ditto Music, Loudr, Mondotunes, ReverbNation, Symphonic, TuneCore, and Zimbalam. TuneCore alone represents 1 in 3 independent artists.

61. Each aggregator submits its client's recordings to "digital music stores" like defendant for review. By "for review" plaintiffs mean that no digital music store is under any obligation to accept the recordings.

62. Plaintiffs, and likely most Putative Plaintiffs, were not aware their recordings were even submitted to defendant.

63. Each of the aggregators make it very clear that if the digital music store accepts some or all of the recordings, then the aggregator has the authority to convey ONLY a license to the sound recordings.

64. Each aggregator has a contract with each individual digital music store, which is renegotiated every few years. For example, TuneCore has a contract with defendant that governs the rights and obligations vis-à-vis the submitted recordings.

65. It is industry standard for the agreements between the aggregators and digital music stores to require the digital music stores to obtain the mechanical licenses for every recording before the store, like defendant's, includes the song in its service.

66. The aggregators also have various divisions, one that handles the sound recording licensing, one that handles the publishing licensing, and others.

67. Each is a completely separate division of the company and requires any user to enter into separate contracts.

68. The contracts between the divisions in each aggregator and the artist, has nothing to do with the rights or obligations of the defendant under Section 115 or the defendant's contract with the aggregator.

## FACTS SPECIFIC TO EACH PLAINTIFF

### RICHARD CUPOLO

69. CUPOLO is the beneficial owner of ten (10) U.S. Copyright Registrations.

70. Defendant reproduced and made CUPOLO's ten (10) copyrighted recordings available for streaming in defendant's premium subscription interactive streaming service in the United States sometime in or about December 2016.

71. CUPOLO was unaware his copyrighted recordings were on defendant's premium subscription interactive music streaming service until August 2017.

72. CUPOLO's recordings were streamed on defendant's premium subscription interactive music streaming service from December 2016 to the date of this Complaint.

73. Defendant failed to report any U.S. streams of CUPOLO's recordings for its premium subscription interactive music streaming service.

74. An independent investigator streamed every CUPOLO recording multiple times in the United States on defendant's premium subscription interactive music streaming service.

75. Defendant failed to report any of the investigator's streams, or pay royalties for same.

76. Defendant failed to serve an NOI for any of CUPOLO recordings.

77. At no time did defendant pay CUPOLO any publishing royalties or late fees for

its premium subscription interactive music streaming service.

78. At no time did defendant serve an Annual Statement of Account on CUPOLO for its premium subscription interactive music streaming service.

79. At no time did defendant serve a Monthly Statement of Account on CUPOLO for its premium subscription interactive music streaming service.

80. Pursuant to 17 U.S.C. § 501, defendant infringed CUPOLO's exclusive rights to all ten (10) of his copyrighted works. Defendant's acts of infringement were obviously intentional under 17 U.S.C. § 504(c).

## JOHN EMANUELE

81. EMANUELE is the beneficial owner of two (2) U.S. Copyright Registrations.

82. Defendant reproduced and made every recording which appears on EMANUELE's two (2) copyright registrations available for streaming on its premium subscription interactive music streaming service in the United States sometime in or about December 2016.

83. As **Exhibit 2** shows, TuneCore sent an email dated December 7, 2016 to EMANUELE requesting EMANUELE "opt-in" on the TuneCore website to include his *Filmmusik 1 and Ambient Works V1*, U.S. Copyright Registration No. SR 677-965 in defendant's premium subscription interactive music streaming service. EMANUELE **did not** elect to "opt-in".

84. As **Exhibit 3** shows, TuneCore sent an email dated December 7, 2016 to email to EMANUELE requesting EMANUELE "opt-in" on the TuneCore website to include his Complete Discography 2009-2013 in defendant's premium subscription interactive music streaming service. EMANUELE **did not** elect to "opt-in".

85. Until August 2017, EMANUELE was unaware his recordings were on defendant's premium subscription interactive music streaming service.

86. EMANUELE's recordings were streamed on defendant's premium subscription interactive music streaming service from in or about December 2016 to the date of this Complaint.

87. An independent investigator streamed every EMANUELE recording multiple time in the United States.

88. Defendant failed to report any of the investigator's streams for publishing royalty purposes, or pay royalties for same.

89. Defendant failed to serve an NOI for any EMANUELE recording.

90. At no time did defendant pay EMANUELE any publishing royalties or late fees.

91. At no time did defendant serve an Annual Statement of Account on EMANUELE.

92. At no time did defendant serve a Monthly Statement of Account on EMANUELE.

93. Pursuant to 17 U.S.C. § 501, defendant infringed EMANUELE's exclusive rights to his three (3) copyrighted works. Defendant's acts of infringement were obviously intentional under 17 U.S.C. § 504(c).

## BRYAN EICH

94. EICH is the beneficial owner of one (1) U.S. Copyright Registrations, *Sleeping by A Wire*, U.S. Copyright Registration No. SRu 661-491 which includes thirteen (13) recordings. All thirteen (13) recordings were included and streamed on defendant's premium subscription interactive music streaming service.

95. Defendant failed to notify EICH that his recordings were included in defendant's premium subscription interactive streaming.

96. EICH was unaware his copyrighted recordings were on defendant's premium subscription interactive music streaming service until August 2017.

97. Defendant failed to report any U.S. streams of EICH's recordings on defendant's premium subscription interactive streaming.

98. An independent investigator streamed every EICH recording multiple time in the United States.

99. Defendant failed to report any of the investigator's streams, or pay publishing royalties for same.

100. Defendant failed to serve an NOI for any EICH recording.

101. At no time did defendant pay EICH any publishing royalties or late fees for its premium subscription interactive music streaming service.

102. At no time did defendant serve an Annual Statement of Account on EICH for its premium subscription interactive music streaming service.

103. At no time did defendant serve a Monthly Statement of Account on EICH for its premium subscription interactive music streaming service.

104. Pursuant to 17 U.S.C. § 501, defendant infringed EICH's exclusive rights to both of his registrations.

105. Defendant's acts of infringement were obviously intentional under 17 U.S.C. § 504(c).

**FACTS SPECIFIC TO DEFENDANT**

106. Defendant owns and operates the largest Internet radio station, and a premium subscription interactive music streaming service which allows the user to choose any recording they want to play.

107. Defendant's premium subscription interactive music streaming service is subject to Section 115 of the Copyright Act.

108. Defendant did not serve any NOIs on plaintiffs or the Putative Class before it launched its premium subscription interactive music streaming service.

109. Defendant has, to date, not paid any royalties or late fees to plaintiffs or any member of the Putative Class for its premium subscription interactive music streaming service.

## DEFENDANT'S FAILURE TO PAY PUBLISHING ROYALTYS

110. Defendant was obligated to serve monthly royalty payments pursuant to 17 U.S.C. § 115(c)(5).

111. The statute states that "the royalty under a compulsory license shall be payable for every phonorecord made and distributed in accordance with this license," and that a phonorecord is "distributed" when the licensee "has voluntarily and permanently parted with its possession." 17 U.S.C. 115(c)(2).

112. In addition, the statute specifies that "[r]oyalty payments shall be made on or before the twentieth day of every month and shall include all royalties for the month next preceding." Id. at 115(c)(5). 17 U.S.C. 115(c)(5) further provides: "[e]ach monthly payment shall be made under oath and shall comply with requirements that the Register of Copyrights shall prescribe by regulation". See also 79 F.R. 181, pg. 56199.

113. At no time has any named plaintiff or Putative Class member received a Monthly or Annual Royalty Report or payment for defendant's premium subscription interactive music streaming service.

## FIRST CLAIM FOR RELIEF
## COPYRIGHT INFRINGEMENT
### (On Behalf of Plaintiffs and the Putative Class)

114.   Plaintiff incorporates the allegations contained in the preceding paragraphs as if set forth at length here.

115.   Defendant has, without a license for the publishing rights from plaintiffs or the Putative Class, reproduced, made available to the public, and distributed plaintiffs' and the Putative Class' copyrighted compositions through its interactive web-based subscription streaming product.

116.   It cannot be disputed that the plaintiffs and the Putative Class have valid, registered copyrights and own the publishing rights to their copyrighted compositions. Defendant reproduced and offered the copyrighted compositions for streaming, including permanent and temporary digital download, without a license for the publishing rights, thus infringing plaintiffs' and the Putative Class' rights under Section 115 of the Copyright Act. Irreparable injury is presumed here as plaintiffs and the Putative Class have established a prima facie case of copyright infringement.

117.   The making or the distribution, or both, of all copyrighted compositions without the payment of proper royalties and late fees is actionable as acts of infringement under section 501 and fully subject to the remedies provided by sections 502 through 506 and 509.

118.   Each time plaintiffs and the Putative Class were deprived of their statutory royalty entitlement, e.g., by non-payment of royalties and late fees, a distinct harm was done to plaintiffs' and the Putative Class' property interest.

119.   Defendant's predatory conduct was clearly intentional within the meaning of 504(c)(2) for purposes of enhancing statutory damages. Defendant knew its actions constituted

an infringement each time it failed to serve an NOI or make a royalty payment.

120. Defendant's knowledge may also be inferred from its conduct including the reckless disregard of the plaintiffs' and Putative Class' rights (rather than actual knowledge of infringement), which suffices to warrant award of the enhanced damages.

121. As a direct and proximate result of defendant's infringement, plaintiffs and the Putative Class have incurred damages, as described more fully above. Pursuant to 37 C.F.R. § 385. Plaintiffs and the Putative Class are entitled to a "per stream" statutory royalty rate of $.01 for interactive web-based streaming services like defendant's.

122. Plaintiffs and the Putative Class may also elect to recover statutory damage pursuant to 17 U.S.C. § 504(c)(2) for willful infringement of up to $150,000, but not less than $30,000, for each registration which has been infringed.

## SECOND CLAIM FOR RELIEF
## FAILURE TO PAY ROYALTIES
### (On Behalf of Plaintiffs and the Putative Class)

123. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set for that length herein.

124. As described herein, defendant systematically failed to pay the publishing royalties and late fees owed to plaintiffs and the Putative Class.

125. Plaintiffs and the Putative Class members have been damaged, and defendant has been unjustly enriched, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs, on behalf of themselves and on behalf of all other persons similarly situated, respectfully prays for relief against defendant as follows:

1. certify this matter as a class action;

2. enter an order appointing plaintiffs as class representative and plaintiffs' counsel as class counsel;

3. enter judgment in favor of plaintiffs and the class;

4. enter injunctive and/or declaratory relief as is necessary to protect the interests of plaintiffs and the Class (17 U.S.C. § 502), including enjoining defendant from continued copyright infringement and violations of the relevant provisions of the Copyright Act;

5. restitution of defendant's unlawful proceeds, including defendant's gross profits;

6. award compensatory damages to plaintiffs and the Putative Class in an amount to be ascertained at trial;

7. award statutory damages to plaintiffs and the Putative Class according to proof, including but not limited to all penalties authorized by the Copyright Act (17 U.S.C. §§ 504(c)(1), 504(c)(2));

8. award reasonable attorneys' fees and costs (17 U.S.C. § 505);

9. award plaintiffs and each Putative Class member pre- and post-judgment interest to the extent allowable;

10. award plaintiffs and the Putative Class all unpaid royalties and late fees; and,

11. award such other and further relief that the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: August 20, 2017

GARBARINI FITZGERALD P.C.

By: _____
Richard M. Garbarini (RG 5496)